UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**     ) | |
| **Plaintiff,**     ) | |
| ) | |
| v.     ) | Criminal Case No. 05-341-05 (RMU) |
| ) | |
| **GARETH DAVITON LEWIS**     ) | |
| a.k.a. "David Lewis,"     ) | |
| a.k.a. "Mocho,"     ) | |
| ) | |
| **Defendant.**     ) | |
| _____) | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION AND PROPOSED ORDER

The United States respectfully moves this court to order the pretrial detention of defendant Gareth Daviton Lewis (Lewis) pursuant to 18 U.S.C. § 3142(e). As set forth herein, there is a statutory presumption in favor of detention because the defendant is charged with, inter alia, Conspiracy to Manufacture and Distribute for the Purpose of Unlawful Importation Into the United States Five Kilograms or More of Cocaine, in violation of 21 U.S.C. § 959 and 960, which is an offense that carries a maximum penalty of more than ten years imprisonment. Moreover, the government believes the defendant has no ties to the United States; the government believes the defendant has the ability to flee and would flee if released from custody; and the government believes the defendant would pose a danger to the community unless his is detained.

I.     **Factual Background**

Lewis has been brought to the United States based upon charges in this case which arise from evidence obtained during an investigation which revealed that Lewis is a member of a drug

(cocaine) trafficking and transportation organization (DTO).  He is currently in custody in Washington, D.C. Jail or CTF.

The evidence against Archbold and the indicted co-conspirators consists of seizures of cocaine, surveillance, Colombian court-authorized intercepted telephone conversations, and cooperating and/or government witnesses.  The evidence from the investigation shows that from at least 2005 to the present, Lewis and the indicted co-conspirators have transported thousands of kilograms of cocaine, intended for transport to the United States, using "go fast" boats from locations in northern Colombia to transhipment points in Central America.  From Central America the cocaine is transported to final destinations in the United States.

The DTO, which Lewis is a member of, operates in and around the north coast of Colombia, South America trafficking in cocaine intended for transportation to the United States.  The DTO transports large loads of cocaine from cocaine laboratories in the Sierra Nevada Mountains of northern Colombia to the coastal areas of northern Colombia, then to Central America and Mexico where it is then brought to the United States.  The DTO would receive cocaine shipments, which are transported by truck from the laboratory locations in the nearby Sierra Nevada Mountains, are loaded into "go fast" boats.

The "go fast" boats are specifically designed to hold a ton or more of the cocaine at a time.  Moreover, these boats are typically outfitted with two to four high performance outboard engines each, enabling the boats to travel long distances at relatively high speeds, even when fully loaded.  The boats leave their loading locations along the northern coast of Colombia to meet maritime shipping vessels at sea to offload or go to offloading locations in Central America and Mexico.  At the offloading locations, the cocaine shipments are received by other drug trafficking organizations and transported into the United States.

Based upon the evidence in this case the DTO has shipped thousands of kilograms of cocaine from Colombia to the United States since 2005. Several of those cocaine shipments, amounting to thousands of kilograms, were seized by law enforcement, specifically, on July 22, 2005, January 21, 2006, March 7, 2006, and March 24, 2006. Members of the DTO fulfill a number of responsibilities within the DTO to facilitate the manufacture and transportation of cocaine from Colombia to Central America or the Caribbean Sea region, then to Mexico, and finally to the United States. There have been numerous recorded conversations between members of the DTO concerning shipments and transportation of cocaine in quantities of a thousand kilograms or more. The conversations between members of the DTO involved all aspects of supervising, organizing, and facilitating numerous cocaine shipments, including the cocaine shipments seized by law enforcement agents.

This investigation revealed that Gareth Lewis and his father, Jeffrey Lewis employed and financed many individuals to perform various tasks in furtherance of the cocaine smuggling operations, to include utilizing their shipping company to facilitate the transportation of large shipments of narcotics. The Lewises sent monies via Western Union to co-defendant Archbold-Manner to pay for expenses incurred by vessel crew members while they are waiting to transport shipments of narcotics. In addition, the Lewises sent monies to Archbold-Manner to pay for him to travel from Panama to Colombia or Panama to Jamaica to coordinate the transportation of large shipments of cocaine.

9. Gareth and Jeffrey Lewis utilized legitimately maritime shipping vessels, low profile speed boats (commonly known as "go-fast" boats) and fishing vessels in their maritime smuggling operations. Gareth and Jeffrey Lewis coordinated with Archbold-Manner the use of go-fast boats to transport multi-hundred kilogram quantities of cocaine from the Northern Coast

of Colombia to areas in the Caribbean for transfer onboard maritime shipping vessels and boats.

9. During July of 2005, the Jamaican Constabulary Force (JCF), a Jamaican law enforcement agency and the Colombian National Police (CNP), through a judicial wire intercept, intercepted several telephone conversations between Gareth Lewis, Jeffrey Lewis, Alvaro Archbold-Manner and associates regarding the transportation of a shipment of cocaine via go-fast and cargo vessel departing from the North Coast of Colombia via Mexico with a final destination to the United States. As a result of coordinated efforts between DEA Country Offices and foreign counterparts, the Colombia Coast Guard interdicted a go-fast vessel in Colombian waters on July 22, 2005. Subsequent to the interdiction, approximately 1,500 kilograms of cocaine were seized and two Colombian Nationals were arrested.

10. During March of 2006, the JCF and the CNP, through a judicial wire intercept, intercepted several telephone conversations between Gareth Lewis, Jeffrey Lewis, Alvaro Archbold-Manner and associates regarding the transportation of a shipment of cocaine via go-fast vessel and the Dan Viking Cargo Vessel departing from the North Coast of Colombia via Mexico with a final destination to the United States. As a result of coordinated efforts between DEA Country Offices and foreign counterparts, the United States Coast Guard interdicted the Dan Viking Vessel on international waters on March 27, 2006. Subsequent to the interdiction, approximately 2,500 kilograms of cocaine were seized and seven individuals were arrested.

## II.  Legal Analysis

The federal bail statute authorizes a defendant's pretrial detention when no "condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community." 18 U.S.C. § 3142(e). The statute further provides that there is a rebuttable presumption that the defendant should be detained if there is probable cause

to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, 18 U.S.C. § 3142(e).

The existence of the indictment in this case establishes probable cause as a matter of law. See e.g., United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990). Moreover, the Government is permitted to proceed by proffer to establish other facts relevant to the bail decision. United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

Several other factors in the detention statute also support the Government's request for pretrial detention. First the nature and circumstances of the offense are compelling. 18 U.S.C. § 3142(g)(1). Second, the weight of the evidence against the defendant is substantial. The evidence in this case consists of seizures of cocaine, go-fast boats transporting the cocaine on international waters, legally authorized wiretaps of the defendant discussing the cocaine, surveillance of the defendant and co-conspirators and the testimony of cooperating and/or government witnesses. 18 U.S.C. § 3142(g)(2). Third, the fact that although the defendant was born in the United States and claims U.S. citizen the government is aware of no known ties to the United States; the defendant is also a citizen of Jamaican who resides full-time in Jamaica with his family, which argues in favor of his detention pending trial. 18 U.S.C. § 3142(g)(3)(A). Several courts have ordered pretrial detention of foreign defendants without any contacts to the United States. E.g., United States v. Vargas, 804 F.2d 157 (1st Cir. 1986) (Chilean defendant in drug importation case who had no family ties to U.S. was properly detained when no conditions or combination of conditions would reasonably assure his appearance at trial); United States v. Geerts, 629 F.Supp. 830 (E.D. Pa. 1985) (defendant was citizen of Netherlands who faced possibility of approximately fifty years imprisonment on customs related charges and had no significant ties to United States; he thus presented a serious risk of flight which justified pretrial

detention). The government is unaware of any significant ties, including family, work, business, friends or property, by the defendant to the United States.

Finally, the defendant constitutes a clear and present danger to the community. The federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus, constitute a danger to the community. See United States v. Knight, 636 F.Supp. 1462 (S.D. Fla. 1986). Accord United States v. Creekmore, 1997 W.L. 732435 (D.D.C. 1997)(Facciola, J.).

### III.     Conclusion

For all of the foregoing reasons, the Government respectfully requests that the motion to detain the defendants without a bond pending trial be granted.

Dated: July 26, 2007

                                          Respectfully submitted

                                          KEN BLANCO, Chief
                                          Narcotics and Dangerous Drug Section

                                          /s/
                                          Patrick H. Hearn
                                          Trial Attorney
                                          Narcotics and Dangerous Drug Section
                                          U.S. Department of Justice
                                          1400 New York Avenue, N.W.
                                          Washington, D.C.  20005
                                          (202) 305-7606

## **CERTIFICATE OF SERVICE**

      I hereby certified that a copy of the forgoing motion was sent to Defendant Archbold's attorney, Richard Keith Gilber, via ECF on July 26, 2007.

      /s/
      Patrick H. Hearn
      Trial Attorney
      U.S. Department of Justice