## UNITED STATES DISTRICT COURT
## FOR THE  DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Criminal Case No. 05-341-05 (RMU) |
| | ) | |
| **GARETH DAVITON LEWIS** | ) | |
| **a.k.a. "David Lewis,"** | ) | |
| **a.k.a. "Mocho,"** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S  MOTION TO DISMISS

The United States of America, by and through Patrick H. Hearn, Trial Attorney, United States Department of Justice, Criminal Division, Narcotic and Dangerous Drug Section, hereby respectfully submits the Government's Response in Opposition to Defendant's Motion to Dismiss.  In support thereof, the United States submits the following points and authorities and any other such points and authorities as may arise at any hearing on this motion.

## ARGUMENT

In his motion to dismiss, defendant Gareth Daviton Lewis ("Lewis") makes two separate arguments: first that the indictment suffer from duplicity and second that venue in the District of Columbia is improper.  Lewis' arguments are without merit and his motion to dismiss should be denied accordingly.

## I. _____ THE INDICTMENT IS NOT DUPLICITIOUS

Lewis seeks to have all charges against him dismissed because they are duplicitous. Count One of the indictment charges that, from on or about April 28, 2005 to the date of the indictment, April 18, 2006, in Colombia and elsewhere, Lewis conspired to distribute cocaine knowing and intending the cocaine would be unlawfully imported into the United States in violation of 21 U.S.C. § 963 by virtue of 21 U.S.C. §§ 959(a) and 960. Count Two of the indictment charges that, on or about July 22, 2005, in Colombia and elsewhere, Lewis distributed and caused the distribution of cocaine knowing and intending the cocaine would be unlawfully imported into the United States. Count Six of the indictment charges that, on or about March 24, 2006, in Colombia and elsewhere, Lewis distributed and caused the distribution of cocaine knowing and intending the cocaine would be unlawfully imported into the United States. Defendant's duplicity argument is based upon the indictment language charging in the conjunctive, "* * * *intending and knowing* that such substance would be unlawfully imported into the United States." Although, the defendant does not address the duplicity argument as to each Count in the indictment, an analysis for, each Count is required.

### A. Count One: 21 U.S.C. § 963

Lewis claims that Count One charges multiple crimes. His duplicity argument is inapplicable to a conspiracy count.

> The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects. A conspiracy is not the commission of the crime which it contemplates, and neither violates nor arises under the statute whose violation is its object. Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes. The single agreement is the prohibited conspiracy, and however

diverse its objects it violates but a single statute, s 37 of the Criminal Code. For such a violation only the single penalty prescribed by the statute can be imposed.

Braverman v. United States, 317 U.S. 49, 54 (1942) (citation and internal quotation marks omitted).  See also United States v. Woods, 187 Fed. Appx. 524 (6th Cir. 2006) (Single-count indictment charging defendants with conspiracy to distribute and to possess with the intent to distribute powder and crack cocaine did not charge separate offenses and was not duplicitous); United States v. Dunbar, 367 F. Supp. 2d 59 (D. Mass. 2005) (Allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime).  Because Count One alleges a violation of a single statute, 21 U.S.C. § 963, with its proscribed penalty, Lewis' argument must fail.

### B.  Counts Two and Six: 21 U.S.C. §§ 959 and 960

Lewis claims that Counts Two and Six are duplicitous.  As with Count One, his duplicity argument fails.  Federal Rule of Criminal Procedure 7(c)(1), concerning the nature and contents of an indictment, states that an indictment may allege in a single count that the defendant committed an offense "by one or more specified means."  Duplicity occurs when two or more distinct and separate offenses are joined in a single count.  It is well established that when a statute may be violated by multiple means, the government may charge the alternatives in the conjunctive.  Turner v. United States, 396 U.S. 398 (1970); see also United States v. Cusumano, 943 F.2d 305, 311 (3d. Cir. 1991) (where the relevant statute lists alternative means of violation, the general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive the verdict stands if the evidence is sufficient with respect to any of the acts charged).

3

Courts have consistently held that when a statute states, in the disjunctive, that there are several ways to violate a single statute, it is preferable not to "charge the offense in the disjunctive (as it appears in the strict language of the statute) … [as it] would make the indictment bad for uncertainty, so it is necessary to connect them with the conjunctive 'and' before evidence can be admitted as to more than one act." United States v. Joyce, 454 F.2d 971, 976-77 (D.C. Cir. 1971); see also United States v. Gunter, 546 F.2d 861 (10th Cir. 1976) (indictments that charge in the disjunctive, using the word or, are defective).

In the instant matter, 21 U.S.C. § 959 of the Controlled Substances Act ("CSA") states:

(a) Manufacture or distribution for purpose of unlawful importation

It shall be unlawful for any person to manufacture or distribute a controlled substance in schedule I or II or flunitrazepam or listed chemical—

(1)    intending that such substance or chemical will be lawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United states; or

(2)    knowing that such substance or chemical will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States.

21 U.S.C. § 959(a).  Counts Two and Six of the indictment charges the defendant, in pertinent part, with "* * * *intending and knowing* that such substance would be unlawfully imported into the United States."  Lewis argues that, despite its plain text, § 959 criminalizes two separate offenses based on whether a defendant acted knowingly or intentionally.  Although Lewis asserts that "actual knowledge" and "intention" are "both practically and conceptually different," Def. Mot. at 11, he does not offer a single case to support his theory.  The government is aware of no § 959 case that has made this distinction.  United States v. Chan Chun-Yin, 958 F.2d 440 (D.C.

Cir. 1992), the sole case upon which Lewis relies, does not purport to make such a distinction.

Chan involved the very different question of whether § 959 requires actual knowledge or whether constructive knowledge sufficed.

Nor does Lewis' interpretation of presumed Congressional intent support his argument. Lewis offers no support for his theory that "Congress clearly contemplate[d] two separate offenses combined into 959(a)." Mot. to Dismiss at 12. Rather, Congress' intent in passing § 959 was twofold. First, "[a]dopted in 1970, the statute is expressly aimed at having extraterritorial effect." United States v. King, 552 F.2d 833, 850 (9th Cir. 1976). Second, in passing the Comprehensive Drug Abuse Prevention and Control Act of 1970, including § 959, Congress intended the statute to "have a broad sweep in dealing with all aspects of drug abuse." United States v. Baker, 609 F.2d 134, 137 (5th Cir. 1980).[1]

C.    **The Defendant's Analogy to 18 U.S.C. § 924(c) is Incorrect; § 959 is Analogous to 18 U.S.C.§ 641**

---

[1] In passing § 959, it is also clear that Congress intended to exercise its extraterritorial jurisdiction in accordance with established international law, which recognizes five principles of international jurisdiction: "(1) territorial, wherein jurisdiction is based on the place where the offense is committed; (2) national, wherein the nationality or national character of the offender; (3) protective, wherein jurisdiction is based on whether the national interest is injured; (4) universal, which amounts to physical custody of the offender; and (5) passive personal, wherein jurisdiction is based on the nationality or national character of the victim." Chua Han Mow v. United States, 730 F.2d 1308, 1311 (9th Cir. 1984) (internal citations omitted). Traditionally, courts have upheld Congress's authority to criminalize extraterritorial acts of drug trafficking under the "objective" view of the territorial principle of jurisdiction, otherwise known as the "effects principle," which was first developed in Strassheim v. Daily, 221 U.S. 280, 285 (1911). See Baker, 609 F.2d at 138; King, 552 F.2d at 850-51. Although there is little legislative history behind 959, it appears that the language is intended to satisfy the effects principle, i.e., the defendant intended or knew that the drugs were destined for the United States.

In comparing § 959 to 18 U.S.C. § 924(c), Lewis cites <u>United States v. Savoires</u>, 430 F.3d 376 (6th Cir. 2005), which relies almost entirely on the previous decision of <u>United States v. Combs,</u> 369 F.3d 925 (6th Cir. 2004).  Lewis' reliance on § 924 and <u>Savoires</u> is incorrect and easily distinguished.   In <u>Combs</u>, the court took part in a statutory interpretation of § 924(c) and found that the statute contained two distinct crimes. Section 924(c) states that:

> * * * [A]ny person who, during and in relation to any crime of violence or drug trafficking crime… for which the person may be prosecuted in a court of the United States, *uses or carries* a firearm, ["use offense"]
>
> *or*
>
> who, in *furtherance of* any such crime, possesses a firearm, shall, in addition to the punishment for such crime of violence or drug trafficking crime [receive an additional penalty] ["possession offense"].  <u>Combs,</u> 369 F.3d at 931.

The court looked to both the statutory language and legislative history.  In coming to its decision, the court found that the "use offense," as the court described it, connoted more than mere possession of a firearm and instead required some active employment of the firearm by the person committing the offense.  <u>Combs,</u> 369 F.3d at 932-33.  "The 'during and in relation to' element requires that the firearm 'furthered the purpose or effect of the crime and its presence or involvement was not the result of coincidence.'"  <u>United States v. Warwick</u>, 167 F.3d 965, 971 (cited in  <u>Combs,</u> 369 F.3d at 932-33).  The "possession offense" required distinct and different proof from the "use offense."  The language "in furtherance of" required a higher standard of participation than the "during and in relation to" language.  There were also correlating factors that the court discussed as to what constituted "possession." <u>Combs,</u> 369 F.3d at 933.  The court concluded that the numerous and distinct type of proof that each clause required clearly showed that the legislature intended for these two acts to constitute different crimes.  <u>Id.</u>

Consequently, whereas § 924 uses a disjunctive "or" to separate what are two separate crimes § 959 uses the disjunctive for two methods of proving one crime. A more apt analogy would be 18 U.S.C. § 641, which states,

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
>
> Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted–
>
> Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 641. In United States v. Burton, 871 F.2d.1566 (11th Cir. 1989), the defendants had been charged in a single count with violating 18 U.S.C. § 641 both by embezzling and by converting money of the United States to their own use. The Eleventh Circuit rejected their argument that the indictment was duplicitous:

> Where a penal statute, such as 18 U.S.C. § 641, prescribes several alternative ways in which the statute maybe violated and each is subject to the same punishment, however, the indictment may charge any or all of the acts conjunctively, in a single count, as constituting the same offense, and the government may satisfy its burden by proving that the defendant, by committing any one of the acts alleged, violated the statute. The conjunctive allegations do not render the indictment duplicitous.

Id. at 1573. (Citations omitted)

The court noted that the statute in question identified several acts in the disjunctive, each of which was a violation of the statute. The acts of embezzling and of converting government property were two separate ways in which a violation of the law could occur, but they did not

constitute two separate crimes. "An indictment is not duplicitous if, in one count, it charges a defendant with violating the statute in both ways." Id. at 1574.

Other similarly written statutes have also been interpreted in the same manner in response to duplicity arguments. Courts have rejected claims that indictments were duplicitous where they charged that defendants violated 18 U.S.C. § 922(g)(1), felon in possession of a firearm and ammunition, or its predecessor statutes by receiving, by shipping, by transporting, and by possessing firearms. "Each is an alternative way to violate the statute; each is subject to the same punishment." United States v. Wiley, 979 F.2d 365, 368 (5th Cir. 1992). See also United States v. Harper, 802 F.2d 115, 118-19 (5th Cir. 1986); United States v. Wesley, 918 F. Supp. 81, 87. (W.D.N.Y. 1996); United States v. Carter, 917 F.Supp. 1, 3 (D.D.C. 1995).

In the instant case, Lewis is charged in Counts Two and Six, conjunctively, with violating the statute in two ways: by his intending that such substance would be unlawfully imported into the United States and by his knowing that such substance would be unlawfully imported into the United States. These are simply alternative ways in which a single statute was violated in a single transaction. Lewis' duplicity argument is therefore without merit.

## II.    VENUE IS APPROPRIATE IN THE DISTRICT OF COLUMBIA

Lewis contends that the government has failed to establish venue for either the conspiracy charge under 21 U.S.C. § 963 (Count One) or the substantive drug trafficking charge under 21 U.S.C. § 959 (Count Two and Six). First, Lewis argues that venue for the conspiracy charge lies only in the Southern District of Florida because he committed "overt acts" in that district. Mot. to Dismiss at 20. Second, Lewis claims that venue for the substantive charge must also lie in the Southern District of Florida because he entered the United States in August 2005 through Miami,

Mot. To Dismiss at 5, although he was subsequently extradited to the United States from Jamaica

on July 22, 2007.  Lewis' arguments ignore the clear language of 18 U.S.C. § 3238, the D.C.

Circuit's decision United States v. Gurr, 471 F.3d 144, 155 (D.C. Cir. 2006), which interprets §

3238, and the straightforward venue language in 21 U.S.C. § 959(c).  Accordingly, Lewis'

arguments must fail.

### A.    Venue for the Conspiracy Charge is Properly in this District Under 18 U.S.C. § 3238 Because Lewis Was Indicted Before His Extradition

The history of a statute establishing extraterritorial venue dates back to the first Congress.

See Cook v. United States, 138 U.S. 157, 182 (1891); Justice Story, 2 Story, Const. § 1781.

From its inception, the statute predicated venue on the physical custody of the defendant,

establishing venue where the person was "found," "arrested," or "first brought."  Courts agree

that, in using these terms, "Congress had restraint in mind."  United States v. Erdos, 474 F.2d

157, 160 (4th Cir. 1973).  The first clause of § 3238 incorporates these historical concepts by

providing that:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought.

18 U.S.C. § 3238.

In 1963, Congress added a second clause to § 3238, providing that:

> but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of last known residence of the offender or of any one of two or more joint offenders, of, if no such residence is known, the indictment or information may be filed in the District of Columbia.

18 U.S.C. § 3238.  Courts, including the D.C. Circuit, have consistently held that the two clauses

in § 3238 must be read in the disjunctive.  Gurr, 471 F.3d at 155; United States v. Layton, 855

9

F.2d 1388, 1410-11 (9th Cir.1988), rev'd on other grounds; United States v. Fraser, 709 F.2d

1556 (6th Cir.1983); United States v. McRary, 616 F.2d 181, 185 (5th Cir.1980); United States

v. Hsin-Yung, 97 F. Supp. 2d 24, 29 (D. D.C. 2000); United States v. Hay, 376 F.Supp. 264, 268

n. 2 (D.Colo.1974); United States v. Torres-Garcia, 2007 WL 1207204 at *7 (D.D.C. 2007); see

also Wright 2 Fed.Prac. & Proc.Crim.2d § 304 (West Supp.1999).  Thus, when the "defendant is

indicted *before* he is brought into the United States, he may be tried in the district in which he

was indicted regardless of whether it is the district in which he is first brought into the United

States." Charles A. Wright & Arthur R. Miller, 2 Fed.Prac. & Proc.Crim.2d § 304 (West 1982)

(emphasis added); see also Gurr, 471 F.3d at 155 (citing Wright & Miller).  Because Lewis was

first indicted in this District on January 3, 2006[2] and subsequently brought to the United States

through the extradition process on July 22, 2007,  venue is proper under 18 U.S.C. § 3238.

### B.    Venue for the Substantive Violation of § 959 is Properly in this District Under the Clear Venue Provision in § 959(c)

Lewis is charged with violating 21 U.S.C. § 959, which is unique in its express

extraterritorial application and in its venue provision (21 U.S.C. § 959(c)).  Section 959(c)

provides, in part, that the defendant "shall be tried in the United States District Court at the point

of entry where the person enters the United States, or in the United States District Court for the

District of Columbia."  21 U.S.C. § 959(c).  Lewis focuses on the first clause of this venue

provision and argues that this mandates venue in the Southern District of Florida because he

traveled to Miami two years before his extradition on the instant charges.  Mot. to Dismiss at 2.

---

[2] The original indictment in this case was returned September 14, 2005, but Lewis was not included in that indictment.  Lewis was added to the first superseding indictment on January 3, 2006 and included in the second superseding indictment, returned on April 18, 2006.

Lewis' argument, however, ignores the clear text of the venue provision, which provides two alternative venue options – either a place of entry *or* the District Court for the District of Columbia.  Nothing in the venue provision indicates that one option takes precedence over the other, and Lewis offers no compelling argument for his strained reading of this straightforward text.  Indeed, there are at least three reasons to reject Lewis' interpretation of § 959(c):  (1) it is inconsistent with the statute's plain language; (2) it ignores established maxims of statutory construction; and (3) it produces an absurd result.

    **1. Lewis' interpretation conflicts with the plain text and traditional maxims of statutory construction.**  The text of § 959(c) is clear – venue is available either in this District or the district in which the defendant enters.  A simple logical disjunctive ("either - or") does not imply a hierarchical structure; rather, it separates two equal clauses.  Chao v. Day, 436 F.3d 234, 236 (D.C. Cir. 2006).  "Courts presume that 'or' is used in a statute disjunctively unless there is clear legislative intent to the contrary."  Id. at 236 (internal citations and quotations omitted).  The dictionary defines  "or" as being "[u]sed to indicate * * * an *alternative*" Id. (quoting American Heritage Dictionary of the English Language) (emphasis in Supreme Court's opinion).  Therefore, under a plain reading of § 959(c), Lewis' interpretation must fail.

    **2. Traditional statutory construction confirms the plain meaning of § 959.**  Even if the simple language in § 959(c) were somehow ambiguous, traditional statutory construction supports the conclusion that § 959(c) does not contain a hierarchical structure in which the place of entry trumps venue in this District.  It is well-established, as a canon of statutory construction, that Congress knows how to deprive a court of authority over a case when it chooses to do so.  See, e.g.,  Alexander v. C.I.R., 825 F.2d 499, 501 (D.C. Cir. 1987).  Specifically, when

establishing  venue, Congress knows how to create a hierarchical structure in which venue is determined by the timing of events or other conditions precedent.  Indeed, 18 U.S.C. § 3238 is the primary illustration of a hierarchical venue provision and is proof positive that Congress could have imposed a similar scheme in § 959(c).  The fact that Congress instead chose two straightforward clauses in § 959(c) separated by a simple disjunctive ("or"), indicates that Congress did not intend for one clause to take precedence over the other.

Lewis's argument also conflicts with the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Doe v. Chao, 540 U.S. 614, 630-31 (2004) (internal citations and quotations omitted).  In Lewis' view, there can be no venue in this district because he entered elsewhere.  Mot. to Dismiss at 2-3.  Logically, a defendant will always enter another district before entering the District of Columbia because this District lacks an international airport or seaport.  Thus, Lewis' view renders the second clause, establishing alternative venue in this District, superfluous and void.  Accordingly, Lewis' argument that venue must be in the Southern District of Florida because he once entered there is without merit.

**3. Lewis' interpretation creates an absurd result**.  Under Lewis' theory, a prior entry, no matter how far removed in time, takes precedence over the second clause of § 959(c), which establishes venue for extraterritorial cases in the District Court for the District of Columbia.  There is no logic to this approach, as the entry may have no relationship to the charged crime and it permits a defendant with no connections to the United States to control venue by simply purchasing an airline ticket.  Moreover, Lewis' interpretation creates a potential conflict when a defendant has entered the United States multiple times at multiple locations.  Given the clear

language of the statute, allowing a defendant to control venue by virtue of his travel plans produces an absurd result.[3]

### C.    Article III, § 2, cl. 3 of the Constitution Does Not Preclude Venue in This District

Article III, § 2, cl. 3 of the United States Constitution provides that "the trial of all crimes shall be held in the state where the said crimes shall have been committed; *but when not committed within any State, the trial shall be at such place or places as the Congress may by law have directed*." U.S. Const. art. III, § 2, cl. 3 (emphasis added).[4] With respect to an extraterritorial offense, Article III, § 2, cl. 3 "impose[s] no restriction as to the place of trial, except that trial cannot occur until congress designates the place, and may occur at any place which shall have been designated by congress previous to the trial." Cook v. United States, 138 U.S. 157, 182 (1891); see Reid v. Covert, 354 U.S. 1, 7-8 (1957) (given its "obvious meaning, § 2 is applicable to criminal trials outside of the States as a group without regard to where the offense is committed or the trial held").

The Supreme Court has long recognized the importance of Congress' constitutional authority to designate venue in extraterritorial offenses: "'As crimes * * * may be committed on

---

[3] The government is aware of no cases that interpret the scope of the term "entry" under § 959(c), but at least one Circuit Court has construed the same language in the Maritime Drug Law Enforcement Act. In United States v. Rendon, 354 F.3d 1320, 1326 (11th Cir. 2003), the Eleventh Circuit has held that a person has "entered" a particular district when landed there in the custody of the United States Coast Guard.

[4] The Sixth Amendment similarly provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. Amend. VI. Once it is determined that an offense is extraterritorial, the Sixth Amendment's vicinage clause has no application. Cook v. United States, 138 U.S. 157, 183 (1891).

13

the high seas and elsewhere, out of the territorial jurisdiction of a state, it was indispensable that

in such cases congress should be enabled to provide the place of trial.'" <u>Cook</u>, 138 U.S. at 182

(quoting Justice Story, 2 Story, Const. § 1781).[5]  From the early days of the Republic, Congress

has enacted venue provisions governing extraterritorial offenses, and the Supreme Court has

upheld its authority to do so under Article III, § 2, cl. 3.  <u>See</u>, <u>e.g.</u>, <u>Reid</u>, 354 U.S. at 8 ("From the

very first Congress, federal statutes have implemented the provisions of § 2 by providing for trial

of murder and other crimes committed outside the jurisdiction of any State 'in the district where

the offender is apprehended, or into which he may first be brought.'") (internal citations omitted);

<u>Cook</u>, 138 U.S. at 181-82 (discussing the Act of April 30, 1790, which established that "the trial

of crimes committed on the high seas, or in any place out of the jurisdiction of any particular

state, shall be in the district where the offender is apprehended, or into which he may first be

brought."); <u>Jones v. United States</u>, 137 U.S. 202, 211-12 (1890) (Congress had constitutional

authority to designate venue for a murder committed on a "guano island" under 1856 Guana

Islands Act); <u>United States v. Jackalow</u>, 66 U.S. 484, 486-87 (1861) (holding that Congress has

the constitutional authority to designate venue for offenses that occur outside the jurisdiction of a

state); <u>United States v. Dawson</u>, 56 U.S. 467, 484 (1853) (same).

      Congress has criminalized the extraterritorial distribution of certain controlled substances

under § 959 and established venue under § 959(c).  A substantive violation of § 959 is expressly

an extraterritorial crime; the section "is intended to reach acts of manufacture or distribution

---

[5] The text of Justice Story's commentaries can be found on-line at
http://www.constitution.org/js/js_338.txt, although the quoted language appears under § 1775 of
that document.

committed *outside the territorial jurisdiction of the United States*." 21 U.S.C. § 959(c) (emphasis added); see King, 552 F.2d at 850 ("Adopted in 1970, the statute is expressly aimed at having extraterritorial effect."). Therefore, Congress has constitutional authority to designate venue for a substantive violation of § 959.

In addition, in this case, the conspiracy to distribute cocaine is an extraterritorial crime, for which Congress can establish venue under 18 U.S.C. § 3238. As Lewis acknowledges, the agreement is the crime. Mot. to Dismiss at 18. Here, Lewis and his co-conspirators entered into the criminal agreement while outside the United States, a fact Lewis does not dispute. Accordingly, the conspiracy was an extraterritorial crime, and Congress has the constitutional authority to designate venue.[6] See Torres-Garcia, supra at *7-8.

---

[6] This result is also consistent with the Supreme Court's analysis of domestic cases in United States v. Rodriguez-Moreno. In Rodriguez-Moreno, the Court rejected a conceptually similar effort to bifurcate two interrelated crimes (kidnaping and the use of a gun during a crime of violence) for venue purposes. United States v. Rodriguez-Moreno, 526 U.S. 275 (1999). In that case, the Court held that the kidnaping charge was the "crime of violence" that made the use of a gun illegal under 18 U.S.C. § 924(c). The Court explained:

the *locus delicti* [of the charged offense] must be determined from the nature of the crime alleged and the location of the acts constituting it. In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.

Rodriguez-Moreno, 526 U.S. at 279 (internal citations and quotations omitted). Here, the *locus delicti* of the conspiracy is extraterritorial. Because the crime was the extraterritorial distribution of cocaine and the extraterritorial conspiracy to distribute cocaine, Burton v. United States, 202 U.S. 344 (1906) (Mot. to Dismiss at 21) is inapposite. The key point in Burton is that, under the law applicable in that case, there was no crime until the defendant accepted the offer. Burton, 202 U.S. at 387. Here, the commission of one overt act in Miami does not constitute the crime.

**D.    Commission of Overt Acts in the United States Does not Render Venue Unconstitutional**

Lewis argues that venue is unconstitutional for both the conspiracy and substantive charges because he committed overt acts in the United States. Mot. to Dismiss at 20. Lewis bases his analysis on a flawed syllogism and the Second Circuit's decision in United States v. Gilboe, 684 F.2d 235 (2d Cir. 1982), Mot. to Dismiss at 20, 22, which is *dictum* and has been rejected by every Circuit to consider this issue. Lewis' argument is therefore unpersuasive.

**1. Commission of an overt act is not commission of the conspiracy.** From the outset, Lewis bases his argument on the following flawed syllogism: Lewis' telephone call while allegedly hiding in the United States was an overt act in furtherance of the conspiracy; venue in a conspiracy case *may* lie where overt acts occurred; therefore venue is proper *only* where overt acts occurred. Mot. to Dismiss at 31-32. This logic is invalid because the commission of an overt act in a district does not *mandate* venue; rather, venue in a conspiracy case may be proper in multiple fora. See Hyde v. Shine, 199 U.S. 62, 76-77 (1905). There is nothing unconstitutional about this approach United States v. Levy Auto Parts of Canada, 787 F.2d 946, 952 (4th Cir. 1986) (citing Hyde). Thus, the fact that venue may be appropriate in the Southern District of Florida does not preclude venue in this District. United States v. Williams, 589 F.2d 210, 213 (5th Cir. 1979) ("The venue statutes are not mutually exclusive, and a suggestion that venue is proper under § 3237(a) will not serve to divest venue from another judicial district if venue is proper in that district under § 3238.").

**2. The statutory text refutes Lewis' argument.** Second, the text of § 3238 does not support Lewis' argument that "[w]here a defendant's criminal activity is both inside and outside

the United States, as is the case here § 3238 simply does not apply." Mot. to Dismiss at 25-26.

The text of § 3238 provides that "[t]he trial of all offenses *begun* or committed upon the high

seas, or elsewhere out of the jurisdiction of any particular State or district." 18 U.S.C. § 3238

(emphasis added). The use of the word "begun" clearly indicates that § 3238 applies to cases

even when the crime has a domestic component. Levy, 787 F.2d at 950 (§ 3238 is continuing

offense statute); Torres-Garcia, supra at *7 (applying § 3238 even where significant domestic

overt acts were alleged).

> Lewis' argument is likewise inconsistent with the legislative history of § 3238, which:
>
> illustrates the permissive nature of the language providing for the place for the return of indictments. That language was intended to relieve the prosecution of the burden of demonstrating that an offender who remained without the territorial jurisdiction of the U.S. was a "person fleeing from justice" under 18 U.S.C. § 3290, for purposes of tolling any applicable statute of limitations.

McRary, 616 F.2d at 185. In the instant case, the government has permissibly availed itself of

the option, specifically provided by Congress, to indict an offender outside the territorial

jurisdiction in the District Court for the District of Columbia. See United States v. Smith, 452

F.3d 332, 334 (4th Cir. 2006) ("venue rules do not require the government to prosecute in any

particular district when venue lies in multiple locations"); Williams, 589 F.2d at 210, 213 (venue

statutes not mutually exclusive).

    **3. Gilboe is unpersuasive and inconsistent with other jurisprudence.** Similarly,

Lewis' reliance on Gilboe to support his analysis is misplaced for several reasons. First, the

language in Gilboe upon which Lewis relies is *dictum*, Levy, 787 F.2d at 950-51; Torres-Garcia,

supra at *7, and is recognized as such within the Second Circuit. See United States v. Bin Laden,

91 F. Supp. 2d 600, 613 n.23 (SDNY 2000). Second, the analysis in Gilboe relies solely on the

title of § 3238 ("Offense not committed in any district"), but does not acknowledge the text of the statute or its legislative history. Gilboe, 684 F.2d at 239. It is beyond cavil that "the title of a statute * * * cannot limit the plain meaning of the text." Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 212 (1998) (internal citations and quotations omitted); Torres-Garcia, supra at *7.

Third, and most telling, Gilboe is inconsistent with the rulings of every other circuit that has addressed this issue. See, United States v. Jensen, 93 F.3d 667, 671 (9th Cir.1996) (Fletcher, J., concurring) ("That the defendants also operated their vessels within the District of Alaska does not remove section 3238's applicability – the alleged offense was still 'begun or committed' upon the high seas * * *") (citing 8A James A. Moore et al., Moore's Federal Practice ¶ 18.06[3] (2d ed.1995)) (additional citations omitted); Levy, 787 F.2d at 950-52 (4th Cir. 1986) (finding venue appropriate under § 3238 when conspiracy was "essentially foreign," even when some overt acts occurred in United States); United States v. Erwin, 602 F.2d 1183, 1185 (5th Cir.1979) ("that venue may also be appropriate in another district will not divest venue properly established under § 3238"); Bin Laden, 91 F. Supp. 2d at 613 n.23 (collecting cases); Torres-Garcia, supra at * 7 (declining to follow Gilboe).

Finally, the analysis in Gilboe, especially as applied to international drug trafficking, renders § 959 a virtual nullity and creates an absurd result. Section 959 requires the government to prove that the drugs were destined for the United States as an element of the offense. Thus, in most § 959 cases, including a conspiracy to violate § 959, there will be some overt acts in the United States. This is unavoidable, because drug traffickers must locate purchasers for their wares and must resolve the logistical problems of drug trafficking – transportation, security, and

18

payment.  Indeed, according to Lewis' theory, any minimal contact is sufficient; thus, for example, a drug trafficker operating overseas who even *receives* a single phone call from any place in the United States can claim venue in that district.  This construction is inconsistent with the acknowledged Congressional intent in passing the Comprehensive Drug Abuse Prevention and Control Act of 1970, including § 959, to "have a broad sweep in dealing with all aspects of drug abuse."  Baker, 609 F.2d at 137.

    **4. Lewis' theory permits foreign defendants to manipulate venue.**  In this vein, Lewis' theory creates an absurd result, because it allows an overseas defendant to manipulate venue, even though a change of venue does not advance traditional public policy concerns.  Primary among these concerns was the Founding Father's distaste for the English King's practice of "transporting us beyond Seas to be tried for pretended offences."  United States v. Cabrales, 524 U.S. 1, 6 & n.1 (1998).  Historically, this concern has evolved to a general principle that a defendant should not be haled into a court far from where the offense was committed.  In this case, however, this first public policy concern does not apply.  Lewis does not dispute that he can be haled into court from Jamaica for his crimes, he simply contends it must be in a different United States District Court.  In a case such as this, there is no constitutional difference between venue in the Southern District of Florida (where Lewis allegedly hid from an angry co-conspirator) and the District of Columbia.

**E.    Charging a Conspiracy to Violate § 959 with a Substantive § 959 Count Creates Venue**

Lewis claims that "the question becomes can the government constitutionally try a defendant for conspiracy in any venue it may try an allegedly related substantive offense, when the venue for the conspiracy lies in another district." Mot. to Dismiss at 28. The government contends that this is not the question presented, as venue for the conspiracy count is proper under § 3238 and venue for the substantive count is proper under § 959(c). Nonetheless, should this Court consider this issue, the government notes that at least one district court judge in this district has reasoned that:

> The statute [21 U.S.C. § 963], by its terms, can reach conduct occurring outside of the United States. In prosecutions for violations of § 959(a), 21 U.S.C. § 959(c) makes clear that venue is proper in the United States District Court for the District of Columbia. Extraterritorial conspiracies to violate § 959 should be prosecutable under § 963 in at least the same venues in which prosecutions for the underlying substantive could be maintained.

United States v. Mejia, 2002 WL 33929076 at *3 n.3 (D. D.C. 2002) (citing United States v. Zabaneh, 837 F.2d 1249 (5th Cir. 1988)). Thus, should this Court find that venue is inappropriate under 18 U.S.C. § 3238, venue still may lie in this District under the reasoning in Mejia.

## CONCLUSION

Wherefore, the government respectfully requests, for the reasons set forth above, that this Honorable Court deny defendant Lewis' Motion to Dismiss.

Respectfully submitted,

KEN BLANCO, Chief
Narcotics and Dangerous Drug Section

_____/s/_____

       Patrick H. Hearn
       Trial Attorney
       Narcotics and Dangerous Drug Section
       U.S. Department of Justice
       1400 New York Avenue, N.W.
       Washington, D.C. 20005
       (202) 305-7606

## CERTIFICATE OF SERVICE

      The undersigned certifies that on March 24, 2008, Government's Response in Opposition to Defendant's Motion to Dismiss was sent via ECF to Bruce Harvey, attorney for Gareth Lewis.

_____/s/_____

       Patrick H. Hearn
       Trial Attorney
       U.S. Department of Justice
       Narcotic and Dangerous Drug Section