**UNITED STATES DISTRICT COURT**
**FOR THE  DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Criminal Case No. 05-342-05 (RCL) |
| | ) | |
| **GARETH DAVITON LEWIS** | ) | |
|     **a.k.a. "David Lewis,"** | ) | |
|     **a.k.a. "Mocho,"** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO SUPPRESS**

The United States of America, by and through Patrick H. Hearn, Trial Attorney, United

States Department of Justice, Criminal Division, Narcotic and Dangerous Drug Section, hereby

respectfully submits the Government's Response in Opposition to Defendant's Motion to

Suppress.  In support thereof, the United States submits the following points and authorities and

any other such points and authorities as may arise at any hearing on this motion.

**BACKGROUND**

On May 16, 2005, the United States Drug Enforcement Administration (DEA),

Cartagena, Colombia, office provided a Jamaican telephone number, 876-382-5445, to the DEA,

Kingston, Jamaica, office.  DEA agents in Jamaica provided the phone number to law

enforcement officers of the Jamaica Constabulary Force/Special Investigative Unit (JCF/SIU).

The JCF sought and obtained judicial authorization on May 18, 2005, to conduct a wiretap of

876-382-5445 to intercept telephone conversations.  The resulting criminal investigation

identified defendant Gareth Daviton Lewis and his father Jeffrey Davyton Lewis as individuals

believed to be involved cocaine trafficking conspiracy.

On January 3, 2006, a first superseding indictment was returned against the defendant charging him in Count I --conspiracy to distribute cocaine knowing and intending the cocaine will be imported into the United States, and Count II–distribution of cocaine knowing and intending the cocaine will be imported into the United States.  On April 18, 2006, a second superseding indictment was returned adding a third charge, Count VI–distribution of cocaine knowing and intending the cocaine will be imported into the United States, against the defendant. An arrest warrant defendant was issued by the United States District Court Magistrate.

In July 2006, the United States government sent to the Jamaican government a provisional arrest request base upon the arrest warrant issued in this case.  On August 16, 2006, the Jamaican government acting upon Jamaican judicial authorization arrested the defendant and held him pending his extradition to the United States.  Concurrent with the arrest of the defendant, Jamaican law enforcement acting upon Jamaican judicial authorization conducted searches at the various residences and businesses related to the investigation and seized evidence.

The DEA's involvement with Jamaica law enforcement authorities in the investigation, operation of the wiretaps and searches were minimal, at best.  The DEA does not have operational, supervisory, or managerial control over the wiretap operations of the JCF.  The DEA does provide financial funding for the wiretap equipment.  But, that funding does not result in or allowing the DEA to maintain control over the operation of the wiretaps or the investigations. DEA Special Agent Angelica Gurrolla would meet with her counterparts in the JCF who would apprise of the progress of the investigation.  Again, at these meetings the DEA did not exercise any control over the JCF.  At the time of the defendant's arrest and the execution of the searches by the JCF, Special Agent Gurrolla was present as an observer, but did not participate in the

searches or arrest.

## ARGUMENT

### I.    Defendant's Standing

In his motion to suppress, the defendant alleges that the Jamaican wiretap established by

the officers of the Jamaica Constabulary Force through a Jamaican court order and the searches

of residences and businesses violated his Fourth Amendment rights and should be suppressed.

The proponent of a motion to suppress has the burden of establishing that his own Fourth

Amendment rights were violated by the challenged search or seizure.  As a threshold matter, the

Government argues that Appellant must establish standing to contest the search.  As noted by the

district court, Appellant initially has the burden of proof by a preponderance of evidence that they

individually have standing to bring a claim that the contents of a vehicle were seized illegally

under the Fourth Amendment.  United States v. Riazco, 91 F.3d 752, 754 (5th Cir. 1996)

Appellant carries the burden of proving the extent of his Fourth Amendment rights from the

outset.  Rakas v. Illinois, 439 U.S. 128 (1978), made this crystal clear:  "The proponent of a

motion to suppress has the burden of establishing that his own Fourth Amendment rights were

violated by the challenged search or seizure." 439 U.S. at 131, n.1. See also, United States v.

Caicedo-Llanos, 960 F.2d 158, 162-163 (D.C. Cir. 1992).  In Caicedo-Llanos, the Court could

not have said more plainly that the burden to prove a legitimate expectation of privacy is the

defendant's, and any "failure to raise the issue before the District Court [is] appellant's own." 960

F.2d at 162; accord United States v. Hansen, 652 F.2d 1374, 1381-1382 (10th Cir. 1981); United

States v. Miller, 636 F.2d 850, 853-854 (1st Cir. 1980); see also United States v. Cardona, 955

F.2d 976, 982 (5th Cir.) (where defendant introduced no facts from which expectation of privacy

reasonably could be inferred, government may raise issue for first time on appeal), cert. denied,

3

113 S. Ct. 381 (1992).

Consequently, the first matter that needs to be addressed is that of the defendant's standing. In order for the Fourth Amendment to be applicable the defendant must establish his standing regarding the Jamaican wiretaps and the searches of residences and businesses by Jamaican law enforcement.

### II.     Applicability of the Fourth Amendment to Foreign Searches and Seizures

Assuming arguendo, the defendant establishes standing, he may seek the protections of the Fourth Amendment. The defendant argues that the investigation and his arrest was a "joint venture" between the DEA and JCF. The DEA, in this case, did not participate in the investigation of the defendant to a degree which rendered it a "joint venture."

In United States v. Verdugo- Urquidez, 494 U.S. 259 (1990), the Supreme Court held that the Fourth Amendment does not apply to searches and seizures of property owned by nonresident aliens and located in a foreign country. Accordingly, at present there are two instances in which the Fourth Amendment does not apply to searches conducted in foreign countries: 1) if the search is conducted exclusively by foreign authorities in their own country, and 2) if the search-no matter who conducts it-is of property owned by a nonresident alien.

For United States citizens and resident aliens, the Fourth Amendment applies to foreign searches and seizures: (1) conducted exclusively by the United States government, (2) conducted by the United States in a "joint venture" with foreign authorities, or (3) where foreign authorities act as agents for the United States. Finally, a district court may exclude evidence if the circumstances of the foreign search are so extreme that they "shock the judicial conscience." In this case, the defendant makes no such "shock the judicial conscience" allegation.

The Fourth Amendment does not apply to foreign searches and seizures by foreign

officials, even if the search is directed against a United States citizen.  United States v. Rose, 570 F.2d 1358, 1361 (9th Cir. 1978) (citing Birdsell v. United States, 346 F.2d 775, 782 (5th Cir. 1965)).  According to the Ninth Circuit, "[n]either the Fourth Amendment of the United States Constitution nor the exclusionary rule of evidence, designed to deter federal officers from violating the Fourth Amendment, is applicable to the acts of foreign officials." Stonehill v. United States, 405 F.2d 738, 743 (9th Cir. 1968). See also United States v. Rosenthal, 793 F.2d 1214, 1230 (11th Cir. 1986) (citing Government of Canal Zone v. Sierra, 594 F.2d 60 (5th Cir. 1979)).  One reason for this rule is "the doubtful deterrent effect on foreign police practices that might follow from a punitive exclusion of the evidence by an American court." Rose, 570 F.2d at 1361-62.

Since the Fourth Amendment does not apply, and there is no Fourth Amendment reasonableness inquiry by a district court, when foreign officials, acting on their own, do not follow their own law in obtaining evidence, United States courts may still allow the admission of such evidence if the circumstances surrounding its collection do not shock the conscience of the court.  United States v. Barona, 56 F.3d 1087, 1091 (9th Cir. 1995); Stonehill, 405 F.2d at 746. The Fourth Amendment does not protect nonresident aliens.  Verdugo-Urquidez, 494 U.S. at 274-75.  In Verdugo, the Supreme Court held that the Fourth Amendment does not apply to search and seizure by United States agents of property that is owned by a nonresident alien and located in a foreign country.  In reaching its decision in Verdugo, the Court found that the Fourth Amendment protects only "the people of the United States." Id. at 265.  This term "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." Id. Accordingly, the Fourth Amendment does not apply to searches and seizures (including wiretaps)

involving nonresident aliens conducted by United States agents in a foreign country. Similarly, "[t]he Fourth Amendment does not apply to the search of non-resident aliens on a ship in international waters." United States v. Aikins, 946 F.2d 608, 613 (9th Cir. 1990).

When conducted by, on behalf of, or jointly with the United States government, the Fourth Amendment applies to searches and seizures against United States citizens and resident aliens while abroad. See generally, Barona, 56 F.3d at 1091; United States v. Behety, 32 F.3d 503, 510 (11th Cir. 1994); Rose, 570 F.2d at 1362; United States v. Maturo, 982 F.2d 57, 61 (2d. Cir. 1992); United States v. Mitro, 880 F.2d 1480, 1482 (1st Cir. 1989); United States v. Morrow, 537 F.2d 120, 139 (5th Cir. 1976). United States law determines the admissibility of evidence obtained by United States agents in a foreign country. United States v. Juda, 46 F.3d 961, 968 (9th Cir. 1995); Verdugo-Urquidez, 494 U.S. at 283 n.7 (Brennan, J., dissenting).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Accordingly, a district court reviewing a foreign search involving a United States citizen or resident alien must determine whether the foreign search conducted by United States law enforcement agents was "reasonable" under the Fourth Amendment.

There is no statutory basis for the issuance of a warrant in the United States to conduct searches abroad. Rule 41(b) of the Federal Rules of Criminal Procedure limits the jurisdiction of a federal magistrate to searches "within" the magistrate's federal district. According to the Supreme Court's decision in Verdugo-Urquidez, a search warrant of a federal magistrate "would be a dead letter outside the United States." 494 U.S. at 274. See also, id. at 278 (Kennedy, J.,

6

concurring) (explaining that several factors counsel against overseas application of the warrant requirement including "the absence of local judges or magistrates available to issue warrants, the differing and perhaps unascertainable conceptions of reasonableness and privacy that prevail abroad, and the need to cooperate with foreign officials"); Id. at 279 (Stevens, J., concurring) (concluding that the warrant clause does not apply to overseas searches of noncitizens' homes because of the powerlessness of American magistrates to authorize such searches).

The Fourth Amendment applies to foreign searches and seizures conducted against United States citizens and resident aliens in three situations:  (1) where the search is conducted exclusively by United States agents, United States v. Conroy, 589 F.2d 1258, 1264 (5th Cir. 1994); (2) where foreign law enforcement agents act on behalf of the United States government, Rose, 570 F.2d at 1362; and (3) where the United States sufficiently participates in the search such that it represents a "joint venture," Behety, 32 F.3d at 510.  There is no single test for what constitutes a joint venture.  According to the Ninth Circuit, "the Fourth Amendment could apply to raids by foreign officials only if Federal agents so substantially participated in the raids so as to convert them into joint ventures between the United States and the foreign officials." Stonehill, 405 F.2d at 743.  According to the Fifth Circuit, the Fourth Amendment is "inapplicable to an action by a foreign sovereign in its own territory in enforcing its own laws, even though American officials were present and cooperated in some degree."  Birdsell, 346 F.2d at 782.  To decide whether a joint venture has occurred, a court must closely "scrutinize the attendant facts." Byars v. United States, 273 U.S. 28, 32 (1927).

In the Fifth circuit, compliance or noncompliance with local foreign law has not been dispositive in determining the reasonableness of foreign searches under the Fourth Amendment. See Conroy, 589 F.2d at 1265 ("[t]he mere consent of foreign authorities to a seizure that would

be unconstitutional in the United States does not dissipate its illegality even though the search

would be valid under local law").  In the Ninth Circuit, however, "compliance with foreign law

alone determines whether [a] search violated the Fourth Amendment."  Barona, 812 F.3d at 1093.

According to that circuit, a joint venture foreign search is reasonable if it conforms to the

requirements of foreign law, Juda, 46 F.3d at 968 (citing United States v. Peterson, 812 F.2d 486,

491 (9th Cir. 1986) and Barona, 56 F.3d at 1096), and a joint venture search is unreasonable

under the Fourth Amendment if it does not comply with foreign law.  Peterson, 812 F.2d at 491.

Even if a search does not comply with foreign law, however, it is United States law that

"governs whether illegally obtained evidence should be excluded, and the essence of [the court's]

inquiry is whether exclusion serves the rationale of deterring federal officers from unlawful

conduct." 812 F.2d at 491.  If foreign law was not complied with, a search may be upheld under

the good faith exception to the exclusionary rule when United States officials reasonably rely on

foreign officials' representations of foreign law. Id. at 492.  According to the Ninth Circuit, "[t]he

good faith exception is grounded in the realization that the exclusionary rule does not function as

a deterrent in cases in which the law enforcement officers acted on a reasonable belief that their

conduct was legal." Id. See also, Juda, 46 F.3d 961.

### III.    Joint Venture

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 does not apply

outside the United States and therefore does not apply to foreign wiretaps.  Maturo, 982 F.2d 57.

Standing to contest the extraterritorial search is therefore determined by the Fourth Amendment.

Id. see also Barona, 56 F.3d at 1090-91 (Title III of the Ominibus Crime Control and Safe Streets

Act of 1968 has no extraterritorial force and therefore standing is guided by the applicable

principles of constitutional law).

Wiretap evidence is admissible when foreign officials acting on their own to enforce foreign law properly follow their own law in obtaining the evidence, even where the subject of the foreign search is an American citizen. Maturo, 982 F.2d at 59. In Maturo the court held that the wiretap investigation by Turkish National Police was not a joint venture with agents from the Drug Enforcement Agency even though the DEA helped translate the phone conversations and had immediate access to tapes and made copies of said tapes.

The courts has consistently held that for a joint venture between foreign and United States officials to exist, the interaction must consist of more than simply aiding with the translation of phone conversations, exchanging information accumulated from such wiretap recordings, or United States officers' presence. Maturo, 982 F.2d at 62. See also United States v. Ferguson, 508 F.Supp 2d 1 (D.D.C. 2007) (Bahamian wiretap found not to be a "joint venture" where DEA did not direct day to day activities, did not provide translation and decoding services, and calls not immediately shared but permitted to hear recordings and review line sheets); Pfeifer v. United States Bureau of Prisons, 615 F.2d 873, 877 (9th Cir. 1980) (holding that there was no joint venture where a DEA agent was present and armed while defendant was interrogated in a foreign country); Birdsell v. United States, 346 F.2d 775, 785 (5th Cir. 1965) (holding that although United States officers were "present and cooperating in some degree" with local officials, there was no joint venture sufficient to invoke the protections of the Fourth Amendment); United States v. Morrow, 537 F.2d 120, 140-141 (5th Cir. 1976) (finding no joint venture where United States officers merely furnished information to foreign officials).

The defendant argues that the conduct by Jamaican Officials was a joint venture with the DEA, and evidence collected from the wiretap and searches should be excluded. However, the

conduct of the DEA in this case does not rise to the level of being involved in a "joint venture." The DEA's involvement with the JCF consisted of funding for the wiretaps, being briefed on the status of the Jamaican investigation and as an observer when the searches were executed. Consequently, there is no evidence supporting a joint venture between the DEA and JCF.

IV.    **Compliance with Foreign Law**

If the investigation of the defendant were a "joint venture," the evidence would still be admissible as it was legally obtained pursuant to Jamaican law.  Evidence from a joint venture extraterritorial search between foreign and United States officers is admissible if it is reasonable. United States v. Barona,  56 F.3d 1087 (9th Cir. 1995). Reasonableness is determined by whether applicable foreign law was followed. Id..

In Barona, the court found that Denmark and United Officers conducted a wiretap via a joint venture.  The court then examined to Danish law to determine whether the wiretap was in compliance; finding that there was compliance with Danish law, and therefore the search was reasonable.  The evidence collected from the wiretap was therefore admissible and not subject to exclusion under the Fourth Amendment. Id.

Jamaican authorities, in their establishment of a judicial wiretap and their search of the defendant's property, followed the applicable Jamaican law and established their search pursuant to a court order.  Therefore, the evidence is reasonable and admissible.

V.    **The Good Faith Exception Applies to Extraterritorial Searches**

In United States v. Peterson, 812 F.2d 486, 488-89 (9th Cir. 1987), the court concluded that although a Philippine wiretap with "substantial" U.S. involvement was a joint venture, and officials did not adhere to Philippine law, there was no Fourth Amendment violation and evidence gathered from the wiretap was admissible.  The court held that the good faith exception

applies to American official's reliance on Philippine authorities' assurance that wiretaps were legal. See also United States v. Juda, 46 F.3d 961 (9th Cir. 1995) (good faith exception applies where DEA agent reasonably relied on Australian official's representation that a warrant was not needed).

In this case, the DEA was informed by the JCF that they had obtained the appropriate judicial authorizations to conduct the wiretaps and searches of residences and businesses. Consequently, the DEA relied upon the fact that the wiretaps and searches were supported by appropriate legal authorization from the Jamaican courts.

## CONCLUSION

Wherefore, the government respectfully requests, for the reasons set forth above, that this Honorable Court deny defendant Lewis' Motion to Suppress.

Respectfully submitted,

KEN BLANCO, Chief
Narcotics and Dangerous Drug Section

_/s/_
Patrick H. Hearn
Trial Attorney
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20005
(202) 305-7606

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 24, 2008, Government's Motion for Extension of Time was sent via ECF to Bruce Harvey, attorney for Gareth Lewis.

_/s/_
Patrick H. Hearn
Trial Attorney

11

U.S. Department of Justice
Narcotic and Dangerous Drug Section

U.S. Department of Justice
Narcotic and Dangerous Drug Section